IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DEBORAH LYNN SHELLY                                                        PLAINTIFF

v.                            Civil No. 09-2111

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                             DEFENDANT

**MEMORANDUM OPINION**

I.      **Factual and Procedural Background**

Plaintiff, Deborah Lynn Shelly, appeals from the decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").

Plaintiff filed her DIB and SSI applications on July 5, 2005, alleging an amended disability onset date of May 5, 2004,[1] due to depression, stenosis (spinal), emphysema, hepatitis C, arthritis, carpal tunnel syndrome, and nerve damage. (Tr. 12, 70-74, 76, 467-76). At the hearing, Plaintiff alleged the following additional impairments: swelling in her feet, attention-deficit/hyperactivity disorder ("ADHD"), and post-traumatic stress disorder ("PTSD"). (Tr. 530-31, 535-36). At the time of the amended onset date, Plaintiff was forty three years old and possessed a GED. (Tr. 70, 108). She has past relevant work as a short order cook, yard worker, auto parts clerk, order filler, sample

---

[1] Due to the denial of a prior application, which was subsequently affirmed by the district court, the earliest date Plaintiff may be found disabled is May 5, 2004. (Tr. 77-78, 502).

-1-

gatherer, forklift driver, and production helper. (Tr. 516-21).

Plaintiff's applications were denied at the initial and reconsideration levels. (Tr. 49-50, 54-56, 461-66). At Plaintiff's request, an administrative hearing was held on April 4, 2007. (Tr. 497-547). Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on June 19, 2007, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 9-20). Subsequently, the Appeals Council denied Plaintiff's Request for Review on August 31, 2009, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6). Plaintiff now seeks judicial review of that decision.

## II.  Medical History

### A.  Cooper Clinic

Plaintiff has a history[2] of carpal tunnel syndrome in both hands, hepatitis C (diagnosed in 1995), degenerative disc disease, peripheral neuropathy, and several work-related injuries.[3] (Tr. 190, 247, 258, 295). On April 6, 2000, Plaintiff underwent carpal tunnel release of her left wrist. (Tr. 320). On August 25, 2000, Robert G. Bebout, M.D., noted that the incision had healed nicely and Plaintiff had full range of motion in her hand and wrist. *Id.* At this time, Plaintiff was released from his care. *Id.*

On November 28, 2001, Plaintiff had an abdominal ultrasound, which revealed a normal liver

---

[2] Plaintiff submitted numerous medical records, some of which date back to 1991. Although these records provide a historical basis, we will only consider those records related to Plaintiff's impairments as of the amended onset date.

[3] On August 20, 2002, Plaintiff suffered an avulsion laceration to her right index finger while using a bean probe at work. (Tr. 295). On May 30, 2003, Plaintiff received lacerations to her left and right hand while at work. (Tr. 242, 245). On May 9, 2004, Plaintiff received first and second-degree burns to her right hand and left thumb while working at Staffmart. (Tr. 227, 233). These were all singular incidents resulting in only temporary restrictions. As such, they warrant no further discussion.

and spleen. (Tr. 312).

On May 10, 2002, a nerve conduction study of Plaintiff's right wrist was consistent with mild carpal tunnel syndrome. (Tr. 307). Tonya Phillips, M.D., noted no appreciable change from a previous nerve conduction study performed in February 2000. *Id.* On May 15, 2002, Dr. Bebout noted quite a bit of stiffness and swelling in Plaintiff's right hand. (Tr. 305). On examination, Plaintiff had a positive Phalen's sign, but a negative Tinel sign. *Id.* On November 7, 2002, Dr. Bebout noted that Plaintiff's carpal tunnel syndrome "seems to be status quo" and "is not really bothering her enough to want to undergo surgery at this time." (Tr. 271).

An MRI of Plaintiff's lumbar spine, conducted March 26, 2003, revealed mild central bulges of at the L3-4 and L4-5 levels, and a small annular rim at L3-4. (Tr. 263). No other significant abnormalities were noted. *Id.* On April 11, 2003, Plaintiff complained of shooting pain and numbness up her feet and legs. (Tr. 257). Dr. Phillips noted a history of hepatitis C, which has not been very active. *Id.* She also noted that Plaintiff's recent liver function tests were within normal limits. *Id.* On examination, Plaintiff had full strength in her upper and lower extremities, decreased sensation, and a mildly positive Romberg's test. (Tr. 258). Dr. Phillips assessed Plaintiff with probable peripheral neuropathy with distal dysesthesias, sensory loss and hyporeflexia, etiology unclear. *Id.* She started Plaintiff on Neurontin and ordered an EMG. *Id.* Results of a nerve conduction study were consistent with mild sensorimotor, predominantly axonal neuropathy. (Tr. 253). At a follow-up appointment, Dr. Phillips noted slight improvement on Neurontin. (Tr. 247).

On May 29, 2003, MRIs of Plaintiff's brain and cervical spine were performed. (Tr. 246). The MRI of Plaintiff's cervical spine revealed spondylosis and mild broad disc protrusion with mild canal stenosis at C5-6 and a small central disc bulge vs. protrusion at C6-7. (Tr. 246). The MRI of

Plaintiff's brain revealed a few very small areas of white matter signal abnormality, but was otherwise normal. (Tr. 246).

In 2004, Plaintiff began complaining of swelling, pain, and numbness/tingling in her upper extremities. (Tr. 229, 236-37). A nerve conduction study performed on March 16, 2004, revealed mild carpal tunnel syndrome on the right, slightly worse than the 2002 study. (Tr. 238). Plaintiff was placed in a cockup wrist splint and prescribed Mobic. *Id.* At a follow-up appointment, Dr. Phillips noted that Plaintiff was tried on numerous anti-inflammatories, which were only minimally helpful. (Tr. 236). Plaintiff was then referred to Dr. James Deneke, a rheumatologist. *Id.*

Dr. Deneke saw Plaintiff on May 18, 2004. (Tr. 230-31). She complained of pain and swelling of her hands/fingers, neck discomfort, stiffness of the shoulders, throbbing wrists, hip, back, and knee pain, and dry eyes. (Tr. 229). Dr. Deneke noted a history of hepatitis C, peripheral neuropathy, depression, gall bladder removal, and carpal tunnel surgery on her left wrist. *Id.* Upon physical examination, range of motion was good in Plaintiff's neck, shoulders, elbows, wrists, hips, ankles, and knees, with no indications of pain. (Tr. 230). Plaintiff's hands were "a little puffy, but [there was] no clear cut swelling of the joints." *Id.* Dr. Deneke noted minimal tenderness and some difficulty approximating the fingertips to the palms. *Id.* X-rays of Plaintiff's hands suggested slight narrowing of the DIP and PIP joints. *Id.* Upon examination of Plaintiff's back, Dr. Deneke noted slight pain on motion with anterior flexion and with left lateral flexion, referable to the right SI joint. *Id.* He found no signs of inflammatory arthritis, but assessed Plaintiff with presumed osteoarthritis of the hands (possible tendonitis) and presumed degenerative disc disease of the lumbar spine. (Tr. 230). He prescribed Salsalate, glucosamine, and vitamin C, and recommended isotoner gloves for Plaintiff to wear at night. (Tr. 231). At a follow-up appointment, Dr. Deneke ruled out Sjogren's

syndrome, as Plaintiff's SSA and SSB antigen tests were negative. (Tr. 226).

    B.  <u>Ronald D. Schlabach, M.D.</u>

On August 27, 2003, Plaintiff saw Dr. Schlabach for swelling, stiffness, and numbness in her hands. (Tr. 438). Plaintiff had been taking Celebrex, which was mildly helpful, but was switched to Neurontin. *Id.* On examination, Dr. Schlabach noted good range of motion in Plaintiff's wrists, elbows, and shoulders. *Id.* Radial pulses were strong and equal bilaterally. *Id.* Dr. Schlabach assessed Plaintiff with joint pain and distal numbness of the hands, which he attributed to arthritic change. *Id.*

    C.  <u>Sparks Occupational Medicine North</u>

On February 3, 2005, x-rays of Plaintiff's cervical and thoracic spine were taken, yielding normal results. (Tr. 339).

    D.  <u>Kathleen M. Kralick, Ph.D.</u>

On August 23, 2005, Plaintiff saw Dr. Kralick for a mental health evaluation. (Tr. 341). Plaintiff reported a history of substance abuse, several incarcerations, and two previous suicide attempts. *Id.* She lived in foster care and group homes beginning at the age of eleven. (Tr. 342). Plaintiff completed the eighth grade and later received her GED. *Id.*

On examination, Plaintiff was oriented to person, place, time, and purpose. (Tr. 344). She demonstrated good immediate recall and excellent long-term memory for personal historic information, but poor short-term memory recall. *Id.* Her general fund of information was adequate and she demonstrated adequate attention and concentration to tasks. *Id.* Although Plaintiff demonstrated poor judgment, impulse control, problem-solving, and coping skills by history, her behavior had reportedly improved since she gave up substance abuse. (Tr. 345). Frustration

tolerance was still intermittently poor. *Id.*

Dr. Kralick found that Plaintiff's communication, literacy, cognition, attention, concentration, persistence, and pace, and social abilities were adequate for occupational purposes, although she noted that it was difficult to determine Plaintiff's level of personal responsibility. (Tr. 346). She estimated Plaintiff's IQ at 85-95. *Id.* In Axis I, Dr. Kralick diagnosed Plaintiff with ADHD, combined type, PTSD, chronic and of mild to moderate impairment, and pain disorder associated with both psychological factors and a general medical condition, mild to moderate impairment. *Id.* In Axis II, Plaintiff was diagnosed with personality disorder NOS with antisocial, avoidant, and borderline personality features, of mild to moderate impairment. *Id.* Dr. Kralick determined that Plaintiff had no mental symptoms that would impair her ability to do simple or complex tasks. *Id.* From a mental standpoint, she stated:

> This examiner is unconvinced claimant is unable to do any job. Her employability may be an issue, though this may be due more to her prison history and workman's comp. [sic] claims than due to disability *per se*. Nothing about claimant's mental condition precludes occupational functioning.

(Tr. 347).

E.  Mental RFC Assessment

On August 30, 2005, Dan Donahue, a DDS consultant, reviewed Plaintiff's medical records and determined that she was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public. (Tr. 350-52). He found that Plaintiff was not significantly limited in all other areas. *Id.* Based on his assessment, Donahue determined that Plaintiff could

perform work where interpersonal contact is routine but superficial, e.g., grocery checker, where tasks are learned by experience, with severable variables, where judgment is used within limits, and where the supervision required is little for routine tasks but detailed for non-routine tasks. (Tr. 352).

In a Psychiatric Review Technique form, Donahue considered listings 12.02 (organic mental disorders), 12.06 (anxiety-related disorders), and 12.07 (somatoform disorders), but determined that Plaintiff did not meet the criteria for any listing. (Tr. 365). Donahue found only moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. *Id.*

F. Physical RFC Assessment

On September 9, 2005, Ron Crow, D.O., reviewed Plaintiff's medical records and determined that she could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, and sit, stand, and/or walk for about six hours in an eight-hour workday. (Tr. 371-78). Dr. Crow found that Plaintiff was limited in her ability to push and/or pull with the upper extremities and should avoid repetitive, rapid alternating flexion-extension of her wrists due to carpal tunnel syndrome. (Tr. 372). Otherwise, he found no postural, manipulative, visual, communicative, or environmental limitations, and determined that Plaintiff retained the RFC to perform light work. (Tr. 378).

G. Gordon Sasser III, M.D.

Plaintiff saw Dr. Sasser on October 25, 2005, for pain in her right hip. (Tr. 437). Dr. Sasser noted a history of osteoarthritis, disc disease, emphysema, and idiopathic peripheral neuropathy. *Id.* Plaintiff had been taking Salsalate, but was not on any current medications. *Id.* On physical exam, Plaintiff exhibited tenderness toward the right sciatic notch. *Id.* She had good passive range of

motion in her hips, knees, and ankles, although there was remonstration of discomfort on range of motion toward the sciatic area on the right. *Id.* Dr. Sasser assessed Plaintiff with low back pain, a history of underlying disc disease, idiopathic, peripheral neuropathy, hepatitis C (with occasional nose bleeds, but no other symptoms), and mild emphysema. (Tr. 437). He prescribed Feldene and Flexeril. *Id.*

### H. Good Samaritan Clinic

Plaintiff was seen at Good Samaritan Clinic between April 19, 2006, and May 28, 2009, for various complaints, including moodiness/irritability, swelling in her feet and ankles, abdominal pain, and coughing/sore throat. (Tr. 439-48, 481-96). Plaintiff was prescribed Effexor for depression, which was somewhat effective, but which she had to discontinue because it was not on her prescription drug access plan. (Tr. 442). Liver function tests revealed slightly elevated liver enzymes. (Tr. 443-44, 489, 494).

### I. AHEC Family Medical Center

On November 14, 2006, Plaintiff was seen at AHEC for wheezing and coughing. (Tr. 453-55). She was assessed with mild COPD due to a history of tobacco use. *Id.* Plaintiff was given a prescription for Proventil (an inhaler) and Flexeril. (Tr. 450).

## III. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether

evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV. Administrative Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 5, 2004, the amended onset date. (Tr. 14). At step two, she found that Plaintiff suffered from the following severe impairments: ADHD, osteoarthritis of the hands, and disorders of the spine. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 15). At step four, she determined that Plaintiff retained the RFC to occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, and stand, walk, or sit for about six hours in an eight-hour workday, except she could do no driving as part of work, could only occasionally look over her shoulders (due to limited cervical range of motion), could do no rapid repetitive flex or extension of her bilateral wrists, and must avoid concentrated exposure to dust, fumes, smoke, chemicals, and noxious gases. *Id.* Mentally, the ALJ found that Plaintiff could perform work where the tasks are non-complex and simple, requiring little judgment, where work is learned by rote with few variables, where contact with the public would be incidental only, and which requires concrete, direct, and specific supervision. *Id.* Based on this RFC assessment, the ALJ determined that Plaintiff could no longer perform any past relevant work. (Tr. 18). However, she found that given Plaintiff's age, education, work experience, and RFC, she could perform the requirements of representative occupations such as hotel/motel maid or shirt presser. (Tr. 19). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Act, at any point from the amended onset date through the date of her decision. (Tr. 20).

## V. Discussion

On appeal, Plaintiff contends that the ALJ: (1) incorrectly determined her RFC; (2)

improperly phrased the hypothetical question posed to the vocational expert; (3) improperly dismissed her subjective complaints; and (4) failed to fully and fairly develop the record. *See* Pl.'s Br. 6-15.

    A.  <u>Plaintiff's RFC</u>

Plaintiff argues that the ALJ made an improper RFC assessment concerning her hand limitations. *See* Pl.'s Br. 6-11. We disagree. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

The medical evidence of record establishes that Plaintiff has mild carpal tunnel syndrome and osteoarthritis of the hands, causing pain and swelling in her upper extremities. (Tr. 230, 238). She has taken several anti-inflammatory medications with minimal success. (Tr. 236). She wears cockup wrist splints to reduce pain and swelling. (Tr. 521-23). A nerve conduction study, performed on March 16, 2004, revealed mild carpal tunnel syndrome on the right, which was slightly worse than a 2002 study. (Tr. 238). On May 18, 2004, Plaintiff saw Dr. Deneke, a rheumatologist, who found no evidence of inflammatory arthritis. (Tr. 230). Plaintiff's lab tests, including

sedimentation rate, complete blood count, ANA rheumatoid factor, and double stranded DNA, all came back negative. (Tr. 236). Range of motion in Plaintiff's neck, shoulders, elbows, and wrists was good, with no real pain on motion. (Tr. 230). Plaintiff had some difficulty approximating her fingertips to her palms and her hands were a little "puffy," but there was no clear cut swelling of the joints. *Id.* X-rays of Plaintiff's hands and wrists revealed mild spurring and calcification of the DIP joints but no acute bony abnormalities. (Tr. 232).

Plaintiff argues that the ALJ erred by according significant weight to the physical RFC assessment of Dr. Crow, a non-examining, non-treating physician. *See* Pl.'s Br. 10. Concerning her hands, Dr. Crow found that Plaintiff was limited in her ability to push/pull and must avoid repetitive, rapid alternating flexion-extension of wrists due to carpal tunnel syndrome. (Tr. 372). The ALJ essentially adopted this limitation. (Tr. 15). A non-treating physician's assessment does not usually constitute substantial evidence, especially if it conflicts with the assessment of a treating physician. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). We find no such conflict here. Significantly, no physician in this case, treating or non-treating, concluded that Plaintiff was unable to work. *See Johnston v. Apfel*, 210 F.3d 870, 873 (8th Cir. 2000) (no physician expressed any opinion that the claimant was disabled). In fact, the only restrictions placed on Plaintiff's hands/wrists by *any* physician were temporary in nature.[4] (Tr. 233, 242-44, 250, 269-70, 291, 294-95, 320).

After considering all the relevant evidence, we conclude that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the

---

[4] Dr. Phillips did not restrict Plaintiff from performing any work, but merely concluded that "[i]t may be that her job is just aggravating and there may be little else to do if she continues on in her current job description." (Tr. 236). Since the ALJ determined that Plaintiff's RFC precluded her from performing any past relevant work, there is no conflict between the ALJ's determination and Dr. Phillips' statement. Moreover, Dr. Phillips never stated that Plaintiff was unable to perform her work; she simply stated that Plaintiff might not experience relief from her symptoms while continuing at her current position.

primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence). None of Plaintiff's medical records, most of which are outside the relevant time period, support her contention that she is totally disabled. Plaintiff failed to demonstrate that she is unable to perform substantial gainful activity. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Accordingly, substantial evidence supports the ALJ's RFC assessment.

     B.  <u>Vocational Expert Testimony</u>

Plaintiff argues that the ALJ's hypothetical question did not accurately reflect her limitations. *See* Pl.'s Br. 11-13. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations adopted by the ALJ. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). We decline to address the remainder of Plaintiff's contentions, as they merely reiterate prior arguments.

     C.  <u>Plaintiff's Subjective Complaints</u>

Plaintiff contends the ALJ failed to make express credibility determinations regarding her subjective allegations. *See* Pl.'s Br. 13-15. We disagree.

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the

objective medical evidence does not fully support them." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

At the hearing, Plaintiff testified that she has numbness and swelling in her wrists and must wear braces on both hands. (Tr. 522-23). Due to swelling, she has difficulty gripping and holding items such as coffee cups and utensils. (Tr. 525). Her joints swell with heat and cold. (Tr. 523). She has peripheral neuropathy in her legs, hepatitis C, and problems with her cervical spine. *Id.* Due to hepatitis C, Plaintiff has flu-like symptoms and fatigue. (Tr. 527). She has "electrical shocks" going through her legs and her feet swell. (Tr. 531). Although she quit smoking, Plaintiff still experiences breathing problems. (Tr. 532). She has occasional trouble with her memory and sometimes forgets things. (Tr. 535). Plaintiff does not do any household chores and spends most of her time lying down and watching television. (Tr. 99, 529).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). In discounting Plaintiff's subjective complaints, the ALJ noted the effectiveness of medication in controlling Plaintiff's symptoms and an overall improvement in her condition. (Tr. 19).

Plaintiff has a lengthy history of treatment for her alleged impairments; however, most of the medical records submitted cover a time period prior to the alleged onset date. Plaintiff's treatment records from the *relevant* time period are sparse. *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."). Furthermore, many of Plaintiff's impairments have improved with the use of medication. *See Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (an impairment is not considered disabling if it is adequately controlled with medication). Plaintiff experienced some improvement while taking Effexor for moodiness/irritability. (Tr. 442). Plaintiff's muscle spasms and neuropathy improved with use of Neurontin. (Tr. 437). On October 25, 2005, Plaintiff was given Feldene (anti-inflammatory) and Flexeril (muscle relaxer) to help with swelling in her extremities and peripheral neuropathy. *Id.* Although Plaintiff contends she cannot use her hands, the medical evidence reveals that she has not seen a physician for swelling/pain in her hands since May of 2004. (Tr. 226-30, 439-48, 481-96). Additionally, although Plaintiff claims she experiences constant fatigue and flu-like symptoms from hepatitis C, her liver enzymes are only slightly elevated and her condition has never required Interferon treatment. (Tr. 224, 444).

Plaintiff's sparse treatment history and her seeming improvement with medication cast doubt on the validity of her testimony. Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

D. Duty to Develop the Record

Plaintiff contends the ALJ failed to develop the record concerning her physical impairments. *See* Pl.'s Br. 13. Specifically, she argues that the ALJ had a duty to order a consultative physical examination to determine the extent of Plaintiff's hand impairments. *Id.*

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Under the circumstances of this case, the ALJ fulfilled her duty to fully and fairly develop the record. We are cognizant that there is only one RFC in the transcript, which was completed by a non-treating physician. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence). However, the record is wholly devoid of any evidence, from treating and non-treating physicians alike, that Plaintiff's physical limitations are of disabling severity. Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a

reversal due to failure to develop the record). We find that sufficient evidence existed for the ALJ to make a fully-informed decision as to Plaintiff's alleged disability. *Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (record contained sufficient evidence from which to make an informed decision). Accordingly, the court finds that the ALJ satisfied his duty to fully develop the record.

## VI.     Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

ENTERED this 30th day of August 2010.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE